Bevis, J.
The parties will be designated as relator and defendants. It is the relator’s contention that he and the county commissioners entered into a completed contract by the terms of which he was to receive the sum of eight thousand three hundred and thirty dollars ($8,330.00) for the land taken and for the damage to his improvements and to the residue of his property.
It is the defendants’ contention that the steps taken oy the parties were part of an appropriation proceeding and that the defendants, either under statutory or *187 common law authority, abandoned it, as they had a fight.to do.
It will be necessary to determine, first, whether this was or was not an appropriation proceeding.
The defendants rely mainly on the following part of Section 6900, General Code:
“The county commissioners may abandon the proceeding for the appropriation of lands for any such improvements as aforesaid, upon paying into the probate court the amount of the appellant’s costs and expenses, and attorney fees as fixed and determined by the court, and the court is hereby empowered to fix and determine the same.”
Two separate sets of statutes appear in the briefs. The defendants cite and rely upon General Code Section 6860 et seq., while the relator makes reference to Section 1191 et seq.
It is plain, upon examination, that these two sets of statutes deal with, and are intended to deal with, different situations. They are, in many respects, parallel provisions dealing. with different circumstances. Those relied upon by the defendants (Section 6860 et seq., General Code) relate entirely to county roads and establish the procedure of the county officers in regard thereto. Those cited by the relator (Section 1191, et seq., General Code) deal with the cooperation' of county officials and the state director of highways in the construction, improvement and maintenance of state roads, and establish the procedure in such cases. Their legislative history shows clearly that the General Assembly has repeatedly dealt with both sets at the same time, and that they are not duplications. 112 Ohio Laws, 430 et seq., House Bill No. 67; 113 Ohio Laws, 600 et seq., House Bill No. 195; 114 Ohio Laws, 509 et seq., House Bill No. 294.
The defendants in their answer admit that “the defendant county commissioners were considering the construction of a certain road improvement in con *188 junction with the State of Ohio, this being a state highway and governed by the statutes relative to state highway improvements.”
The agreed statement of facts says that the board of county commissioners “entered into negotiations with Ben E. Bradley for the purpose of acquiring certain land * * * which would be required for the improvement of said State Route No. 82 by the State of Ohio * * Nothing in the record contradicts this statement.
It is plain, therefore, from these and other stipulations in the agreed statement, that the sections relied upon by the defendants (Section 6860 et seq., General Code) are not applicable to the facts of the present case, and that Section 6900, General Code, furnished the county commissioners with no authority for the attempted rescission.
When, however, we turn to the set of statutes governing the cooperation of the county commissioners and the state highway department (Section 1191 et seq., General Code), we find there a somewhat similar provision for the abandonment of an appropriation proceeding.
Section 1201-1, General Code, provides in part:
“The director of highways, if he has not occupied or changed the property appropriated, shall be authorized, within thirty days after the final determination of the cause, in the event a jury verdict is excessive, to elect to -abandon the appropriation proceedings upon payment of the costs.”
Like the portion of Section 6900, General Code, quoted supra, this language, on its face, refers to “appropriation proceedings.’.’ Is it broad enough or may it be so construed as to cover the steps taken in the instant case?
Referring to the preceding sections of the series of which Section 1201-1, General Code, forms a part, we find:
*189 Section 1191, General Code: ‘ ‘ The commissioners of any county may cooperate with the department of highways in * * * constructing, reconstructing, resurfacing or widening a state highway, * * *. County commissioners * * * shall be authorized to cooperate with the department of highways in the cost of obtaining right of way required for or in connection with any state highway improvement or repair contemplated by the director; * ”
Section 1191-2, General Code: “Where county commissioners, under the authority of sections 1191 and 1191-1 of the General Code, cooperate with the department of highways, said commissioners shall be authorized, with the approval of the director, to purchase or appropriate such property as may be needed, or pay damages, if any, * * * and said county commissioners shall follow the procedure specified for the director of highways, as hereinafter provided, for the purchase or appropriation of private property for highway purposes.”
Section 1201, General Code: “If the director is unable, for any reason, to purchase the property for such purposes * * he shall first enter on the journal * * * a finding that it is necessary * * * to appropriate such property * * *.”
Then follow detailed directions as to the successive steps in the appropriation process: fixing of the value, payment of the amount into the probate court; taking possession of the property; filing a plat with the court; notification of the owner.
Section 1201-1, General Code, continues the steps in the appropriation procedure: petition filed by the owner if he be not satisfied with the value fixed; bond; return of the amount paid into court by the highway director; day for trial; jury; view of the premises; charge of the court; verdict; motion for a new trial; petition in error.
Then, in the same section, follows immediately the *190 foregoing language authorizing the abandonment of the “appropriation proceedings.” It would be doing violence to syntax to hold that this authority to abandon extends to proceedings other than appropriation proceedings.
Can the acts of the parties herein be construed as appropriation proceedings? Literally none of the steps prescribed for such proceedings was taken. The owner and the county authorities negotiated, and, according to the statement of facts, agreed. So far as' it appears they never reached the stage when “the director [County Commissioners] is unable, for any reason, to purchase” and “shall first enter on the journal * * * a finding that it is necessary * * * to appropriate * * Section 1201, General Code.
The reiterated distinction in the statutes in question between purchasing and appropriating precludes the possibility that the one can be taken as the equivalent of the other. In our opinion, this was not an appropriation proceeding. Parkside Cemetery Assn. v. Cleveland, Bedford & Geauga Lake Traction Co., 93 Ohio St., 161, 112 N. E., 596; 2 Nichols on Eminent Domain (2d Ed.), 1025; 4 McQuillin on Municipal Corporations (2d Ed.), Section 1570.
This then brings us to the contention of the relator; was there a contract?
Referring again to the agreed statement of facts, it is apparent that the commissioners’ resolution of April 14 can not be taken as an acceptance of the offer in Bradley’s letter. He asked $8,880. The commissioners were willing to pay but $8,330. The resolution may, however, be considered a counter-offer, and the agreed statement finds that “Ben E. Bradley, the relator, was present at the meeting of the Board of County Commissioners and was notified of the adoption of said resolution and agreed to accept the terms *191 and conditions of the same and abide thereby.” In onr opinion this constituted a contract. State, ex rel. Jewett, v. Sayre, Aud., 91 Ohio St., 85, 109 N. E., 636.
The brief of the defendants in error on rehearing argues the omission from the record of certain technical prerequisites, particularly the approval of the director of highways as required in Section 1191-2, General Code. The petition, however, alleges that the “Commissioners pursuant to lawful authority determined to procure * * ,” and in view of the findings in the agreed statement we think it must be taken that the commissioners were legally authorized to purchase the land and to agree to pay damages.
In view of the relator’s admission in open court, however, that the buildings on the land have not been moved, but are still in their original location, the remedy of mandamus can not be allowed. A writ of mandamus in this case would amount to an award of specific performance, which the facts do not warrant. The major portion of the amount to be paid the relator was not for the land, but for damages, which were chiefly referable to the removal of the buildings. He still has the land and the buildings are still intact. They may never be taken.
It is entirely possible that the relator has sustained substantial injury by reason of the refusal of the county to proceed. His remedy, however, would seem to be in damages for breach of contract. Board of Commissioners of Hamilton County v. Mighels, 7 Ohio St., 109; Buchanan Bridge Co. v. Campbell, 60 Ohio St., 406, 54 N. E., 372; Board of County Commissioners of Clark County v. Bentley & Sons Co., 103 Ohio St., 443, 134 N. E., 441; 11 Ohio Jurisprudence, 612; 15 Corpus Juris, 559; Donnelly, Law of Public Contracts, 388.
For the foregoing reasons the writ of mandamus *192 prayed for must be denied. Tbe judgment of tbe Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Allen, Stephenson, Jones, Matthias and Zimmerman, JJ., concur.